IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES R. KUCKLER,<br><br>                    Plaintiff,<br><br>vs.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security<br>Administration,[1]<br><br>                    Defendant. | CV 24-171-BLG-TJC<br><br><br>**ORDER** |

Plaintiff James R. Kuckler ("Plaintiff") filed a complaint pursuant to 42

U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final

administrative decision of the Commissioner of Social Security ("Commissioner")

regarding the denial of his claim for disability insurance benefits and supplemental

security income benefits.  (Doc. 2.)  The Commissioner subsequently filed the

Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment,

seeking reversal of the Commissioner's denial of disability benefits and remand for

an award of disability benefits, or alternatively for further administrative

proceedings.  (Doc. 9.)  The motion is fully briefed and ripe for the Court's review.

---

[1] Commissioner Frank J. Bisignano is substituted in the place of Leland Dudek
pursuant to Federal Rule of Civil Procedure 25(d).

1

(Docs. 11, 14.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on October 19, 2020, and an application for supplemental security income on December 11, 2020. (A.R. 24.)  A hearing was held before Administrative Law Judge Robert Freedman (the "ALJ") on November 2, 2023.  (A.R. 48–79.)  Prior to the hearing, Plaintiff amended the alleged onset date to May 22, 2022.  (A.R. 53.)  On December 22, 2023, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 24–36.)  Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request.  (A.R. 10–12.)  Thereafter, Plaintiff filed the instant action. (Doc. 2.)

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is

based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20

4

C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (9th Cir. 1999) (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (citing 20 C.F.R. § 404.1560(b)(3)).

## III.   THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of May 22, 2022. (A.R. 26–27.)

/ / /

5

Second, the ALJ found that Plaintiff had the following medically determinable severe impairments: obesity; diabetes type II; degenerative disc disease lumbar and spondylotic narrowing lumbar; and lymphedema.  (A.R. 27.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 27–28.)

Fourth, the ALJ concluded Plaintiff has the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b), i.e., lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6/8 hours, and stand/walk for 6/8 hours, except the claimant can climb ramps and stairs at nor [sic] more than occasional; climb ladders, ropes or scaffolds at never; balance, stoop, crouch, crawl, and kneel at no more than occasional; and reach both overhead and laterally at no more than frequent.

(A.R. 28.)

The ALJ next found that Plaintiff was unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (A.R. 35–36.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 36.)

## IV.    DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ properly evaluated his subjective symptom testimony; (2) whether the ALJ erred in

determining the residual functional capacity ("RFC") in accordance with SSR 96-8p; and (3) whether Plaintiff's impairments were properly incorporated into the vocational expert's hypothetical.

### A. Evaluation of Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted his subjective symptom testimony regarding his limitations, and "failed to set forth any inconsistent medical evidence in support of his finding [that Plaintiff's] testimony was not supported in the record." (Doc. 9 at 15.) Plaintiff also contends that the ALJ gave improper weight to evidence in the medical record that predates the amended alleged disability onset date. (Doc. 14 at 2–4.)

A claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  As noted by the Ninth Circuit, "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002)).

"Medical opinions that predate the alleged onset of disability are of limited relevance."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  Nevertheless, the ALJ is required to consider all relevant evidence in the record.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  Therefore, records that precede the onset date are not per se irrelevant, particularly if the alleged disability is not the result of a traumatic event.  *Yanes v. Berryhill*, 2017 WL 4181086, at *3 (E.D. Cal. Sep. 20, 2017).

The ALJ is required to give careful consideration to evidence about symptoms "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone."  *Robbins*, 466 F.3d at 883 (quoting SSR 96-8p, 1996 WL 374184, at *5).  To assess a claimant's

subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).

An ALJ may also take the lack of objective medical evidence into consideration. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004). But "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (internal punctuation omitted); *accord Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it.").

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, but that Plaintiff's statements about his symptoms were not entirely consistent with the medical evidence in the record. (A.R. 29–34.) Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms. The Court finds the ALJ failed to

9

do so.

In discounting Plaintiff's testimony, the ALJ first points to a clinic note from a primary care provider, Seth Larson, who declined to complete a state disability form for Plaintiff.  (A.R. 479.)  Dr. Larson noted that he saw no "clear reason" why Plaintiff could not perform certain self-care tasks such as "bathing, transferring, mobility, meal prep, laundry and dressing."  (A.R. 480.)

Dr. Larson's note does not provide clear and convincing evidence to discount Plaintiff's testimony.  For one, the note predates Plaintiff's alleged onset date by over four months and his hearing testimony by 22 months, and is, therefore, of little relevance in evaluating Plaintiff's testimony almost two years later.  Additionally, Plaintiff's ability to perform simple acts of self-care in his home environment provides little evidence about his ability to engage in substantial gainful employment.  *See e.g., Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603). Thus, an ALJ cannot use "a few random daily activities" to discredit a claimant's testimony absent "findings as to the pervasiveness of these activities, what they entailed, or how the physical functions displayed during the activities are transferable to a work setting."  *Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir.

10

2017).

The ALJ also emphasizes Dr. Larson's recommendation that Plaintiff exercise.  But the ALJ does not cite any similar recommendations for exercise that treatment providers made after the alleged onset date, and the Court is unable to locate any such recommendations in the record.  Indeed, the only time a recommendation of physical activity was made by a treating provider after the alleged onset date was in the last medical appointment in the record, from July 2023, where Kimberly Ackerman, FNP, noted, "[e]ncouraged to be as physically active as possible. This is very difficult. Encouraged upper body exercises."  (A.R. 652.)  Rather than contradicting Plaintiff's testimony, the fact that FNP Ackerman noted that it is "very difficult" for Plaintiff to be physically active, and recommended only upper body exercises, tends to support Plaintiff's testimony regarding his limitations.  The recommendation is also contrary to the ALJ's contention that "recommendations from treating sources urging the claimant to engage in exercises . . . convey[] the assessment that the claimant is capable of exercise."  (A.R. 28.)

The ALJ also selectively cites to other medical evidence prior to the alleged onset date to support his credibility finding.  For example, the ALJ discusses an examination of Plaintiff conducted on June 26, 2021—nearly eleven months before the alleged onset date and more than two years prior to Plaintiff's November 2023

11

testimony—in support of his finding that Plaintiff is capable of a light exertional level.  The ALJ found the examination probative because "there were no significant changes in the claimant's subsequent condition, except for the weight gain."  (A.R. 33.)  But while asserting that this examination report supports his RFC assessment, the ALJ also dismisses aspects of the report that do not align with his overall assessment of Plaintiff's limitations on the basis that the findings are too remote.  For instance, the ALJ states that, "[t]here was a 'Medical Source Statement' at the end of the physical consultative examination report at 3F, but it was ambiguous, stating that the claimant can stand but does have some discomfort (3F/6).  Insofar as there is an opinion here, it is not persuasive as it is nearly one year prior to the adjudicative period and it is not fully supported by the exam findings."  (A.R. 33.)

Elsewhere, the ALJ finds Plaintiff's testimony about his limitations to be inconsistent with the fact that "claimant has reported engaging in a wide range of activities."  (A.R. 34.)  But the reports the ALJ cites for this proposition are questionnaire responses submitted by Plaintiff in February 2021 and January 2022—well before the May 2022 disability onset date and Plaintiff's November 2023 testimony.  (*See* A.R. 272–79, 290–301.)  And yet, as noted above, the ALJ summarily dismisses other record evidence because it is from "well prior to the amended alleged onset date."  (A.R. 34.)

The ALJ also isolates certain findings in the record to support his credibility finding but ignores or discounts others that contradict those findings. For instance, the ALJ writes that "claimant throughout the disability period has generally been found to have a normal gait and full 5/5 strength in his lower extremities (*see e.g.* 10F/3*.*" (A.R. 28.) The ALJ overstates the medical evidence in the record for these findings.

With respect to strength, while the ALJ makes repeated references to the Plaintiff having "full 5/5 strength throughout" (*see e.g.,* A.R. 30, 31, 33, 34), the record evidence is more scant than the ALJ represents. The ALJ writes that Plaintiff was found multiple times after the onset date to "have full 5/5 strength throughout," but, in fact, only one such finding appears in the record: Dr. Nathan Bates' notes from an October 2022 visit which state: "Hip flexion, knee ext, plantar/dorsiflexion motor strength 5/5 bilaterally. Sensation grossly intact. Peripheral pulses are palpable." (A.R. 624.) Although the ALJ writes that "in January 2022, to at least January 2023 the claimant had full 5/5 strength throughout" (A.R. 31), no numerical strength findings—or other references to full strength—appear in the medical records of visits from January 2022, from January 2023, or from any time in between except for the October 2022 visit quoted above. (*See* A.R. 475–77 (January 2022); A.R. 470–71 (March 2022); A.R. 618–19 (September 2022); A.R. 632–34 (December 6, 2022); A.R. 635–39 (December 26,

13

2022); A.R. 642–43 (January 4, 2023); A.R. 647–48 (January 12, 2023).)

At the same time, the ALJ discounts thirteen separate strength findings from the June 2021 examination he relied upon for other findings.  (A.R. 456.)  The ALJ states that, "While strength was slightly reduced at 4/5 throughout, the claimant's treating sources found 5/5 strength throughout and normal gait (see e.g. 10F)."  (A.R. 33.)  As discussed above, however, the sole numerical strength finding that appears in Exhibit 10F is a single notation from the October 2022 visit that lists only four of the thirteen strength categories evaluated at the June 2021 examination.  (*Compare* A.R. 456 *with* A.R. 624.)

As for the assertion that Plaintiff had a normal gait, FNP Ackerman is the only provider who reports that Plaintiff had a normal gait when he presented for two endocrinology evaluations.  (*See* A.R. 618, 643.)  In the final consultation in the record with FNP Ackerman on July 18, 2023, however, Plaintiff presented in a wheelchair.  (A.R. 651.)  While the ALJ acknowledges that Plaintiff used a wheelchair for that examination, the ALJ asserts that "the record is silent with respect to the medical need of such a device," and that, "[i]n this July exam . . . there is no assessment identifying a greater impairment of the claimant's gait or a diminishment in his strength."  (A.R. 31.)  Indeed, the July 2023 note does not mention Plaintiff's gait or strength at all.  (*See* A.R. 650–54.)  What the note does say, however, is that Plaintiff "has significant neuropathy and really cannot feel

14

anything from middle of his lower leg down," that he "has extreme swelling bilaterally of lower extremities," and that he "is now using a wheelchair a majority of the time due to his weight gain." (A.R. 650–51.) Rather than undercut Plaintiff's testimony, the July 2023 examination, if anything, supports Plaintiff's subjective symptom reports.

The only other medical assessment after the alleged onset date in which Plaintiff's gait was noted as "normal" was a October 2022 appointment with Dr. Bates. (A.R. 624.) But in the notes from this same appointment Dr. Bates also observed that Plaintiff's gait was "antalgic." (A.R. 624.) The ALJ acknowledges that Dr. Bates "somewhat inconsistently found that the claimant had both normal and antalgic gait," but resolves this contradiction by finding that, because Plaintiff had full and normal strength and sensation, the provider's findings "point to normal gait." (A.R. 30.)

More significantly, however, the ALJ does not attempt to connect these findings to contradict Plaintiff's testimony or other statements. As noted above, general findings are insufficient. To satisfy the clear and convincing standard, the ALJ is required to specify what testimony is found to be not credible, and identify what evidence undermines the testimony. *Reddick*, 157 F.3d at 722. In his decision, the ALJ identifies only two areas of testimony that he believes are contradicted by the evidence: (1) Plaintiff's testimony that he is unable to stand for

15

more than two minutes, and (2) his testimony that he can no longer play video games.

With respect to the former, the ALJ asserts that Plaintiff's testimony is contradicted by Dr. Bates' examination note of December 2022. (A.R. 30–31.) The ALJ states, "[p]rior to conducting the physical exam, Dr. Bates took notes of the claimant's report of his subjective symptoms. While the claimant did report in December 2022 to Dr. Bates that he felt he could not stand for prolonged periods of time, this subjectively asserted limitation is in contrast to the claimant's testimony during the hearing that he could not stand for more than two minutes. (*See* 10F/16 for the claimant's assertion of difficulty with 'prolonged standing.'" (A.R. 30–31.) But the supposed distinction the ALJ identifies between Plaintiff's November 2023 testimony and his December 2022 examination does not provide clear and convincing reasons for rejecting Plaintiff's testimony. In fact, the statements may not be contradictory at all.

The Office/Clinic Note from the December 2022 visit to which the ALJ refers reads, "[h]as difficulty standing for prolonged periods of time in his back and legs. Feels like he ran a marathon. Worse with ambulation. Sharp pain." (A.R. 632.) While these notations are undoubtedly based on Plaintiff's reports to Dr. Bates, it is not clear from the medical record itself whether this is a verbatim record of what Plaintiff said, as opposed to Dr. Bates' characterization of what he

16

was told by Plaintiff.  In any event, the distinction between "prolonged" and "two minutes" is not as clear-cut as the ALJ purports it to be; "two minutes" is an objective unit of time, whereas "prolonged" standing can connote different amounts of time depending on the context.

The ALJ similarly overstates any inconsistency between the medical record and testimony regarding Plaintiff's ability to play video games.  The ALJ states that, "contrary to what the claimant asserted during the hearing, in December 2022, the claimant told Dr. Bates that he had periods of numbness after 'prolonged periods of gaming' (10F/17; in hearing testimony, however, the claimant testified that he could not play videogames."  (A.R. 31.)  Dr. Bates's medical record actually states: "has parasthesias in hands after long sessions of gaming."  (A.R. 633.)  The Court does not find that there is clear and convincing evidence of inconsistency where a medical provider noted Plaintiff had parasthesias in his hands after playing videogames for unspecified "long sessions," and Plaintiff's testimony nearly a year later that he had become unable to play videogames due to pain in his hands.  (A.R. 68.)  If anything, the medical record documents Plaintiff's long-term difficulty with this activity.

In sum, the Court finds the ALJ's evaluation of inconsistencies between Plaintiff's subjective symptom testimony and the record evidence was not properly supported by specific, clear, and convincing reasons.

## B.    Determination of RFC

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Plaintiff argues the ALJ improperly cherry-picked findings from the record that supported a denial of benefits and disregarded evidence in the record that would support a finding of disability.

The RFC is a measure of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *2.  Social Security Ruling 96-8p requires the ALJ to assess a claimant's RFC based on "*all* of the relevant evidence in the case record."  SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original).  The ALJ is not permitted to "cherry pick" from the record to determine the RFC.  *See Hoffschneider v. Kijakazi*, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022) (quoting *Garrison*, 759 F.3d at 1017 n.23).

Here, as discussed above, the Court has determined the ALJ erred in discounting Plaintiff's testimony.  This error affected the ALJ's determination of Plaintiff's RFC.  Accordingly, the Court finds the ALJ erred in determining the RFC at step four.

## C.    Vocational Expert's Hypothetical

Plaintiff argues the ALJ failed to incorporate all of his impairments and limitations into the hypothetical questions posed to the vocational expert.

/ / /

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ erred in discounting Plaintiff's testimony. This error infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Plaintiff could perform work. As such, the ALJ's determination at step five is not supported by substantial evidence.

### D.    Remand and Reversal

Plaintiff asks the Court to remand this case for an award or benefits, or alternatively further proceedings. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

19

"If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Since Plaintiff's testimony can be properly evaluated on remand, the Court finds remand for further proceedings is appropriate.

## V.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 20th day of March, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge